IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANCISCO MATEO, )<br>    *Plaintiff*, )<br>    )<br>v. )<br>    )<br>SERGEANT DANIEL WALTZ, )<br>CORRECTION OFFICER )<br>DUSTIN GONZALEZ, )<br>CORRECTION OFFICER CHRIS WOLFE, )<br>    *Defendant*. ) | Docket No. 3:21-CV-0552<br><br><br>**JURY TRIAL DEMANDED** |

### COMPLAINT

Plaintiff Francisco Mateo, by his attorneys at the Mizner Law Firm, files this Complaint and states as follows:

### A. Parties.

1. Plaintiff Francisco Mateo is an adult individual who is currently incarcerated at the State Correctional Institution at Camp Hill ("SCI Camphill"), located at 2500 Lisburn Road, Camp Hill, PA 17001.

2. Defendant Daniel Waltz is an adult individual who was at all relevant times employed as a Sergeant at the Lebanon County Correctional Facility, located at 730 E. Walnut Street, Lebanon, PA 17042, and was at all relevant times acting under color of law.

3. Defendant Dustin Gonzalez is an adult individual who was at all relevant times employed as a correctional officer at the Lebanon County Correctional Facility, located at 730 E. Walnut Street, Lebanon, PA 17042, and was at all relevant times acting under color of law.

1

4. Defendant Chris Wolfe is an adult individual who was at all relevant times employed as a correctional officer at the Lebanon County Correctional Facility, located at 730 E. Walnut Street, Lebanon, PA 17042, and was at all relevant times acting under color of law.

## B. Jurisdiction and Venue

5. This action is being brought under the Civil Rights Act, 42 U.S.C. § 1983 which provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and the laws" of the United States.

6. This Honorable Court has jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 & 1343.

7. This Complaint also includes pendent state law claims, over which this Honorable Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

8. Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred within the territorial jurisdiction of this District and the Defendants are subject to personal jurisdiction within this District.

## C. Facts

9. At all times relevant to this Complaint, Mr. Mateo was incarcerated in the Lebanon County Correctional Facility.

10. On May 13, 2019, an inmate named Gabriel Jimenez was relocated to Mr. Mateo's cell, from the Restrictive Housing Unit.

11. On May 14, 2019, Mr. Jimenez refused to "secure in his cell," meaning that he did not place his hands through the door of the cell to be handcuffed.

12. As a result of Mr. Jimenez's noncompliance, a cell extraction team was formed to enter the cell and take physical control of him.

13. Before entering the cell, the corrections officers sprayed "OC", also known as "pepper spray," making it difficult for both Mr. Mateo and Mr. Jimenez to see and breathe.

14. Once the cell was filled with OC spray, both inmates were handcuffed through the slot in the cell door, and then the door was opened.

15. Mr. Mateo was escorted out of the cell by Defendant Dustin Gonzales and a second corrections officer, Chris Wolfe.

16. Defendant Gonzales was holding Mr. Mateo's arm on his right side of his body, and Defendant Wolfe was holding Mr. Mateo on his left.

17. Both Defendants lifted Mr. Mateo's arms up, while they were handcuffed behind his back, placing painful and unnecessary pressure on his shoulders.

18. Defendant Sergeant Waltz, who was overseeing the cell extraction, ordered Defendant Gonzalez and Wolfe to raise Mr. Mateo's arms higher over his back, putting even greater unnecessary pain and pressure on his shoulders.

19. Mr. Mateo cried out that he was in pain, and begged Defendants Gonzalez and Wolfe to lower his arms.

20. However, they refused, despite the fact that Mr. Mateo was not resisting in any way, and was complying with their orders.

21. Mr. Mateo felt and heard something in his right shoulder snap.

22. Mr. Mateo told the Defendants they had injured him.

23. Mr. Mateo was then escorted to a medical isolation cell.

24. Defendant Sergeant Waltz wrote a report of the incident on May 15, 2019, which did not mention Mr. Mateo's injury, or the fact that he was in pain, or the fact that Mr. Mateo had warned them that they were hurting his shoulder prior to his injury.

25. Mr. Mateo filed a grievance, explaining how the Defendants had injured his shoulder, to which a prison staff person responded, "if you had followed all instructions, you would not have needed to have been "calmed down."

26. Thus, the entire attitude throughout the Lebanon County Correctional Facility was that the Defendants had done nothing wrong, and that it was Mr. Mateo's fault that they had injured his shoulder.

27. Mr. Mateo was sent out on multiple trips to both Good Samaritan Hospital and Penn State Hershey Hospital emergency departments because his right shoulder continued to repeatedly dislocate, even with minor movements, causing him excruciating pain and limitation.

28. On May 24, 2019 Mr. Mateo was finally sent out to be evaluated by an orthopedic doctor, Sirish Kondabolu, MD at Wellspan Orthopedics.

29. Dr. Kondabolu noted that Mr. Mateo had been forcefully restrained two weeks prior by Correctional Officers at Lebanon County Correctional Facility and since that initial injury he had been to the Emergency Department five to six times with recurrent shoulder dislocations.

30. Dr. Kondabolu ordered strict shoulder immobilization and an MRI arthrogram of the shoulder to further evaluate his injury. Dr. Kondabolu opined that Mr. Mateo would most likely require surgical intervention to repair his injuries.

31.     On June 18, 2019 Mr. Mateo returned to see Dr. Kondabolu. Dr. Kondabolu again noted right shoulder instability for the past month secondary to a traumatic restraint. The MRI showed a labrum tear and a possible Bankart lesion.

32.     Dr. Kondabaolu recommended dynamic stabilization for three to six months but feared the correctional facility may not be able to provide this to Mr. Mateo and so he referred him to Dr. Anthony Helwig for surgical evaluation.

33.     Unfortunately, after reviewing the MRI report, Dr. Helwig determined that the injury was too significant for him to treat, and so Mr. Mateo was scheduled for a surgical consultation and complete work up at the Penn State Pediatric Bone and Joint Institute in Hershey, Pennsylvania.

34.     Mr. Mateo underwent a CT scan of his shoulder on July 10, 2019, at the Hershey Medical Center.

35.     The CT showed evidence of a prior dislocation with anterior subluxation of the humeral head and a osseous Bankart and Hill-Sachs lesions.

36.     A Bankart lesion is an injury to the labrum of the shoulder caused by repeated subluxations. A Hill-Sachs injury is a compression fracture of the humeral head caused by shoulder dislocation.

37.     Mr. Mateo was evaluated by Dr. Kim on August 16, 2019 for recurrent right shoulder instability. Dr. Kim noted the original injury occurred in May 2019 when his right arm was handcuffed and "violently pulled posteriorly." He further noted that Mr. Mateo felt his shoulder dislocate immediately and even though emergency room physicians had made multiple attempts to reduce his shoulder, it kept dislocating.

38. Dr. Kim reported that Mr. Mateo had "very significant pain and very limited range of motion."

39. Dr. Kim opined that Mr. Mateo would need bony reconstruction and that a simple soft tissue procedure would not restore his stability.

40. Dr. Gary Upderove performed a right shoulder Latarjet surgical procedure with a coracoid transfer on Mr. Mateo on November 4, 2019. This is a surgical procedure involving both the bones and muscle used to stabilize the shoulder and prevent recurrent dislocations.

41. For the first six weeks after surgery, Mr. Mateo had to remain immobilized in the right arm sling.

42. On January 2, 2020 Mr. Matoe returned to see Dr. Updegrove for postoperative follow up. At that visit Dr. Updgrove noted, "I had a lengthy discussion with him again about the salvage nature of this procedure and that I would suspect long term loss of external rotation as a consequence of surgery and to prevent further recurrent instability."

43. Since then, Mr. Mateo has undergone painful physical therapy for his shoulder.

44. However, he has been advised by his medical providers that his injury was too severe to allow for a full recovery, and he will live with a limited range of motion in his right shoulder for the rest of his life.

45. At present, Mr. Mateo has approximately 65% of the range of motion in his right shoulder that he experienced prior to the Defendants excessive force.

46. As a result of the mental distress which the Defendants caused through their unconstitutional conduct, Mr. Mateo has been diagnosed with PTSD, and has been placed on psychiatric medication to control his symptoms.

## D. Legal Standard.

47. Excessive force claims for pretrial detainees are analyzed under the Fourteenth Amendment. *Fuentes v. Wagner*, 206 F.3d 335 (3d Cir. 2000).

48. *Fuentes* instructs that "when a court is called upon to examine the amount of force used on a pretrial detainee for the purpose of institutional security, the appropriate analysis is . . . whether the measure taken inflicted unnecessary and wanton pain and suffering depends on 'whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm.'" *Fuentes*, 206 F.3d at 347.

49. Accordingly, the Eighth Amendment cruel and unusual punishments standards found in *Whitley v. Albers*, 475 U.S. 312, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986) and *Hudson v. McMillian*, 503 U.S. 1, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992), apply to a pretrial detainee's excessive force claim arising in the context of a prison disturbance. *Id.*

50. Therefore, for a pretrial detainee to state an excessive force claim against a prison official, he must adduce evidence that the force used was applied 'maliciously and sadistically to cause harm' and not 'in a good-faith effort to maintain or restore discipline.'" *Lewis v. Williams*, No. 05-013-GMS, 2011 U.S. Dist. LEXIS 62756, at *46-48 (D. Del. June 10, 2011).

## COUNT I - VIOLATION OF THE FOURTEENTH AMENDMENT
## EXCESSIVE FORCE

*Francisco Mateo*
*v.*
*Sergeant David Waltz, CO Dustin Gonzalez, CO Chris Wolfe*

51. The foregoing averments are hereby incorporated by reference, as if set forth fully herein.

52. Defendants Gonzalez and Wolfe used excessive force when they lifted his handcuffed arms high behind his back, beyond his shoulder's ability to move.

53. Defendant Gonzalez's and Wolfe's use of excessive force was exercised for solely to inflict pain on Mr. Mateo.

54. The assault on Mr. Mateo was not done for any legitimate penological or other legitimate purpose, such as gaining his compliance, securing his person, or protecting other individuals in the prison.

55. The excessive and unnecessary force they used against Mr. Mateo was at the express direction of Defendant Waltz, their supervising sergeant.

56. The excessive and unnecessary force was used despite Mr. Mateo advising them that he was in pain, and asking them to lower his arms.

57. As a direct and proximate result of Defendants' use of excessive force against Mr. Mateo, he has suffered:

    a. Repeated dislocations of his right shoulder;

    b. anterior subluxation of the humeral head;

    c. a compression fracture in his right shoulder;

    d. the need for corrective surgery;

    e. the need for corrective physical therapy;

    f. pain and suffering;

    g. mental anguish;

    h. anxiety;

    i. humiliation; and

    j. the loss of life's pleasures.

WHEREFORE, Plaintiff Francisco Mateo respectfully requests that this Honorable Court enter judgment in his favor and against Defendants Sergeant David Waltz, CO Dustin Gonzalez, CO Chris Wolfe in an amount in excess of $75,000.00, along with attorneys fees and all other relief permitted by law.

## COUNT II

### FAILURE TO PROTECT IN VIOLATION OF THE FOURTEENTH AMENDMENT

*Francisco Mateo*
*v.*
*Sergeant David Waltz*

58. The foregoing averments are hereby incorporated by reference, as if set forth fully herein.

59. Sergeant Waltz watched as Mr. Mateo was subjected to excessive force and the unnecessary and wanton infliction of pain, even after he was secured and handcuffed.

60. Sergeant Waltz exacerbated the situation by ordering the other Defendants to raise Mr. Mateo's arms higher and higher behind his back.

61. Sergeant Waltz had a duty as a supervisor on the scene to make sure that Mr. Mateo's constitutional rights were protected, and to ensure that the corrections officers under his command used no more force than is reasonably necessary.

62. By ordering the corrections officers on the scene to engage in behavior that caused Mr. Mateo's serious injuries, Sergeant Waltz deliberately and knowingly acted with total indifference to Mr. Mateo's rights, his health and his safety.

63. At no point during the use of excessive force control the corrections officers, or intervene in any way, although the force that the corrections officers were using against Mr. Mateo was so excessive that its illegality would have been apparent to any reasonable person.

64. As a direct and foreseeable result of Sergeant Waltz's failure to protect him, Mr. Mateo suffered severe harm, injuries and damages, including without limitation:

    a. Repeated dislocations of his right shoulder;

    b. anterior subluxation of the humeral head;

    c. a compression fracture in his right shoulder;

    d. the need for corrective surgery;

    e. the need for corrective physical therapy;

    f. pain and suffering;

    g. mental anguish;

    h. anxiety;

    i. humiliation; and

    j. the loss of life's pleasures.

WHEREFORE, Plaintiff Francisco Mateo respectfully requests that this Honorable Court enter judgment in his favor and against Defendant Sergeant David Waltz in an amount in excess of $75,000.00, along with attorneys fees and all other relief permitted by law.

## COUNT III - ASSAULT AND BATTERY

*Francisco Mateo*
*v.*
*CO Dustin Gonzalez, CO Chris Wolfe*

65. The foregoing averments are hereby incorporated by reference, as if set forth fully herein.

66. Defendants Gonzalez and Wolfe forced Mr. Mateo's handcuffed arms high above his back, without justification or any other legitimate penological purpose, causing a harmful and offensive touching.

67. Defendants Gonzalez and Wolfe caused Mr. Mateo to be in fearful and imminent apprehension for his health and safety.

68. As a result of Defendants Gonzalez's and Wolfe's assault and battery, Mr. Mateo suffered severe harm, injuries and damages, including without limitation:

   a. Repeated dislocations of his right shoulder;

   b. anterior subluxation of the humeral head;

   c. a compression fracture in his right shoulder;

   d. the need for corrective surgery;

   e. the need for corrective physical therapy;

   f. pain and suffering;

   g. mental anguish;

   h. anxiety;

   i. humiliation; and

   j. the loss of life's pleasures.

WHEREFORE, Plaintiff Francisco Mateo respectfully requests that this Honorable Court enter judgment in his favor and against Defendants CO Dustin Gonzalez, CO Chris Wolfe in an amount in excess of $75,000.00, along with attorneys fees and all other relief permitted by law.

        Respectfully submitted,

        MIZNER LAW FIRM

        By: /s/ John F. Mizner

        PA Supreme Court ID 53323
        John F. Mizner
        jfm@miznerfirm.com

        PA Supreme Court ID 322823

Joseph Caulfield
jpc@miznerfirm.com

311 West Sixth Street
Erie, Pennsylvania 16507
(814) 454-3889

*Attorney for the Plaintiff*

**JURY TRIAL DEMANDED**