# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

FRANCISCO MATEO, #QE7489,

      Plaintiff,

      v.

SERGEANT DANIEL WALTZ,
et al.,

      Defendants.

CIVIL ACTION NO. 3:21-cv-00552

(SAPORITO, M.J.)

## MEMORANDUM

This is a fee-paid § 1983 federal civil rights action for damages, brought by an incarcerated plaintiff, Francisco Mateo, appearing through counsel. The plaintiff claims that the defendants—Sergeant Daniel Waltz, Correctional Officer Dustin Gonzalez, and Correctional Officer Chris Wolfe—used excessive force in connection with a cell extraction that occurred on May 14, 2019. As a result of a so-called "bend over" or "escort" restraint technique used by the defendants on Mateo while he was restrained in handcuffs and incapacitated by OC spray,[1] Mateo

---

[1] "OC spray, commonly known as pepper spray, is a nonlethal aerosol used to blind and incapacitate temporarily in order to subdue a subject for arrest." *Lewis v. City of Union City*, 934 F.3d 1169, 1173 n.1 (11th Cir. 2019); *see also Park v. Shiflett*, 250 F.3d 843, 849 (4th Cir. 2001) (describing the physiological effects of OC spray).

suffered a serious injury to his shoulder, which ultimately required surgical treatment, and which nevertheless caused residual permanent impairment.

At the time of this incident, Mateo was a pretrial detainee, incarcerated at the Lebanon County Correctional Facility. His cellmate—who also happened to be his brother, Gabriel Jimenez—refused to comply with staff instructions to "secure in his cell."[2] As a consequence, Waltz ordered that Jimenez be relocated to a medical isolation cell, and a seven-member cell extraction team, lead by Waltz, was assembled.

Due to Jimenez's continued noncompliance,[3] Waltz deployed OC spray into the cell to gain compliance. After a few minutes, both Jimenez and Mateo submitted to being handcuffed through the port in their cell door.

Mateo and his cellmate were then removed from their cell by

---

[2] Based on the context, we understand this to mean that Jimenez refused to turn around and place his hands behind his back and through a port in the cell door for correctional staff to secure with handcuffs.

[3] The defendants contend that Mateo was also noncompliant, but he has disputed this, citing his own deposition testimony, in which he testified that the conversation was strictly between Waltz and Jimenez, and that he had previously expressed his willingness to comply to another correctional officer at the cell door.

members of the cell extraction team to be escorted to decontamination closets. Mateo was physically removed from the cell and escorted by Gonzalez and Wolfe, with Gonzalez on Mateo's right-hand side and Wolfe on Mateo's left-hand side. The escorting correctional officers used a "bend over" or "escort" hold. At their depositions, the defendants testified that the purpose of this technique is to keep the inmate off balance and to keep the escorting officers balanced, ensuring the safety of the escorting officers. They testified that the technique is utilized by the officers bending the handcuffed inmate over at the waist and pressing down on his shoulders, thereby lifting the inmate's elbows and keeping the inmate bent over as he walks.

Gonzalez and Wolfe utilized the "bend over" hold over a period of about one minute as they escorted Mateo from his cell to a decontamination closet. While being escorted, Mateo was subdued and fully compliant with instructions. Waltz ordered the escorting officers to bend him over twice, and then a few moments later, he ordered them to "bend him down more." At his deposition, Mateo testified that, at some point while being escorted to the decontamination closet, he told the guards that he was hurt, saying "Ow, it hurts."

After decontamination, Mateo was escorted to a medical isolation cell. He was not seen by medical staff, however, until four days later.

Beginning the day after the cell extraction, Mateo experienced recurrent and painful shoulder dislocations. The first time his shoulder dislocated was the day after the cell extraction, when he tried to do pushups. He began to complain about the injured shoulder and was seen by medical staff. Within ten days after the cell extraction, he was seen by an orthopedic physician. After medical imaging, he was diagnosed with a glenoid labral tear and possible Bankart lesion. By November 2019, he underwent surgery to repair the injured shoulder.[4]

Among the exhibits submitted into the record on summary judgment is a handheld digital video recording of the cell extraction. It does not depict all of the events concerning Mateo, however, as the camera operator followed Jimenez when the two inmates were split up, about one minute after the cell extraction.

## I.   LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary

---

[4] We note that the complaint alleges that Mateo continues to have a significantly impaired range of motion in the injured shoulder, post-surgery.

judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a prima facie showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that prima facie showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Although evidence may be considered in a *form* which is inadmissible at trial, the *content* of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d

378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

## II.   DISCUSSION

Mateo has asserted three distinct claims against the defendants: (1) a Fourteenth Amendment substantive due process claim against all three correctional officers for excessive use of force; (2) a Fourteenth Amendment substantive due process claim against Waltz only for failure to protect; and (3) state-law tort claims against Gonzalez and Wolfe only for assault and battery. The defendants have moved for summary judgment on all three sets of claims.

### A. § 1983 Excessive Force Claim

Most of the briefing on this motion is focused on the appropriate legal standard that governs Mateo's § 1983 excessive force claim, which is brought under the Fourteenth Amendment's due process clause.[5] In their initial brief, the defendants champion a subjective standard: "whether force was applied in a good-faith effort to maintain and restore discipline, or maliciously and sadistically to cause harm." In support,

---

[5] As a pretrial detainee, Mateo was not subject to the Eighth Amendment's cruel and unusual punishment clause, which applies to convicted prisoners only.

they cite a 2000 decision by the Third Circuit involving excessive force in the pretrial detention context, *Fuentes v. Wagner*, 206 F.3d 335 (3d Cir. 2000), together with several decisions applying the Eighth Amendment's subjective standard applicable to convicted prisoners only.[6] They contend that the force used by the defendants on May 14, 2019, was a constitutionally permissible good-faith effort to restore discipline, rather than an attempt to maliciously or sadistically cause harm.

In his brief in opposition, the plaintiff notes at the outset that the subjective legal standard exclusively relied upon by the defendants was inappropriate, as it had been expressly rejected by the Supreme Court of the United States in a 2015 decision, *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). In *Kingsley*, the Supreme Court squarely rejected the very same subjective standard relied upon by the defendants here—"*i.e.*, that the plaintiff must prove that the use of force was not 'applied in a good-faith effort to maintain or restore discipline' but, rather, was applied

---

[6] The defendants cite *Hudson v. McMillian*, 503 U.S. 1 (1992), *Brooks v. Kyler*, 204 F.3d 102 (3d Cir. 2000), *Whitley v. Albers*, 475 U.S. 312 (1986), *Jackson v. Beard*, Civil No. 3:11-CV-1431, 2016 WL 3621279 (M.D. Pa. Mar. 31, 2016), and *Robinson v. Link*, No. CIV. A. 92-4877, 1994 WL 463400 (E.D. Pa. Aug. 25, 1994), all of which concerned convicted prisoners under an Eighth Amendment standard, not pretrial detainees.

'maliciously and sadistically to cause harm.'" *See id.* at 400. Instead, the Supreme Court held that "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396–97. The Supreme Court further explained:

> A court (judge or jury) cannot apply this standard mechanically. Rather, objective reasonableness turns on the "facts and circumstances of each particular case." A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. A court must also account for the "legitimate interests that stem from the government's need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in the judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security."
>
> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. We do not consider this list to be exclusive. We mention these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force.

*Id.* at 397 (citations and brackets omitted). Based on the foregoing, the plaintiff argues, in essence, that the defendants have failed to make a

prima facie showing that they are entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In their reply brief, the defendants make a misguided attempt to rehabilitate their original argument, doubling down on the applicability of a subjective legal standard. In an attempt to reconcile *Fuentes* with *Kingsley*, they contend that

> the Third Circuit Court of Appeals has recognized an exception to this general rule when an excessive force claim arises in the "context of a prison disturbance." *Fuentes v. Wagner*, 206 F.3d 335, 347 (3d Cir. 2000). In this context, the appellate court has held that the Eighth Amendment's cruel and unusual punishment standard applies to a pretrial detainee's excessive force claim. *Id.*

(Defs. Reply Br. 2, Doc. 35.)[7] The reply brief then cites an additional Eighth Amendment convicted-prisoner decision,[8] a pre-*Kingsley* Fourteenth Amendment pretrial detainee decision utilizing the *Fuentes* subjective standard,[9] and a post-*Kingsley* decision that applied both objective and subjective standards alternately because it was unclear

---

[7] Although they did not cite it at this point in their reply brief, this passage appears to be a verbatim copy of language in *Griffin v. Moody*, Civil Action No. 19-4671, 2021 WL 2826439, at *3 (E.D. Pa. July 6, 2021).

[8] *Whitley v. Albers*, 475 U.S. 312 (1986).

[9] *Cooke v. Goldstein*, Civ. No. 10-893-LPS, 2011 WL 2119347 (D. Del. May 26, 2011).

whether the plaintiff was a pretrial detainee or a convicted inmate.[10] The only post-*Kingsley* pretrial detainee decision that supports the defendants' position is *Griffin v. Moody*, Civil Action No. 19-4671, 2021 WL 2826439 (E.D. Pa. July 6, 2021), which reconciled *Fuentes* with *Kingsley* in (literally) an identical manner as our defendants do here. *See id.* at *3.

About one month after our sister court decided *Griffin*, however, the Third Circuit expressly recognized that the Supreme Court's decision in *Kingsley* "abrogated the portion of *Fuentes* that applied the Eighth Amendment's malicious-and-sadistic standard to pretrial detainees." *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 194 n.5 (3d Cir. 2021).[11] The *Jacobs* court explained:

> In *Bell* [*v. Wolfish*, 441 U.S. 520 (1979)], the Supreme Court explained that "pretrial detainees, who have not been convicted of any crimes, retain *at least* those constitutional rights that we have held are enjoyed by convicted prisoners." Later, in *Graham* [*v. Connor*, 490 U.S. 386 (1989)], the Court explained that it was "clear"

---

[10] *Martin v. GEO Grp., Inc.*, Civil Action No. 19-CV-5763, 2020 WL 1244184 (E.D. Pa. Mar. 13, 2020).

[11] We note that the defendants' reply brief included *Jacobs* in a string citation together with *Griffin* and *Martin* to support the proposition that "a pretrial detainee must show not only that the force was excessive, but that the force was applied maliciously and sadistically." (Defs. Reply Br. 3.) But *Jacobs* holds the exact opposite.

that the Fourteenth Amendment protects pretrial detainees from "the use of excessive force that amounts to punishment." But it was not always clear what the punishment standard entailed.

Courts were left to decide whether the punishment standard was objective . . . or subjective . . . . For example, in *Fuentes v. Wagner*, we held, in part, that "the Eighth Amendment cruel and unusual punishments standards apply to a pretrial detainee's excessive force claim arising in the context of a prison disturbance." Thus, in the context of a disturbance, we required pretrial detainees to show not only that force was excessive, but also that the force was applied maliciously and sadistically. In such a case, the Eighth and Fourteenth Amendment inquiries became identical.

In 2015, [in *Kingsley*,] the Supreme Court clarified that the subjective Eighth Amendment standard does not apply to pretrial detainees. "The language of the two Clauses differs, and the nature of the claims often differs. And, most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'" Instead, the Court held that "a pretrial detainee must show *only* that the force purposely or knowingly used against him was objectively unreasonable." The Court thus clarified that the Fourteenth Amendment, like the Fourth, exclusively employs an objective-reasonableness standard.

*Id.* at 194 (citations and alterations omitted).

Based on the foregoing, we find that the defendants have failed to make a prima facie showing that they are entitled to summary judgment on the plaintiff's § 1983 excessive force claim. *See* Fed. R. Civ. P. 56(a);

*Celotex Corp.*, 477 U.S. at 323. Moreover, based on the facts and evidence of record, viewed in the light most favorable to the non-moving plaintiff, we find that a reasonable jury could conclude that the force used on Mateo in the wake of the cell extraction that occurred on May 14, 2019, was objectively unreasonable. Under the circumstances presented, there remain genuine disputes of material fact with respect to the relationship between the need for the use of force and the amount of force used, the extent of the plaintiff's injury, the severity of the security problem at issue, the threat reasonably perceived by the officers, and whether the plaintiff was actively resisting. *See Kingsley v*, 576 U.S. at 397. In particular, it is beyond dispute that the use of allegedly excessive force occurred *after* the plaintiff and his cellmate had been subdued and handcuffed, the parties dispute whether the plaintiff's serious shoulder injury was caused by this allegedly excessive force, and the plaintiff has adduced evidence to suggest that, while his cellmate had actively resisted, he did not.

### B. Qualified Immunity Defense

Our inquiry with respect to the plaintiff's § 1983 excessive force claim does not end there. In addition to seeking summary judgment on

the merits of the plaintiff's claim, the defendants have interposed the affirmative defense of qualified immunity.[12]

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing *Pearson*, 555 U.S. at 244). Although qualified immunity is generally a question of law that

---

[12] We note that the defendants have not raised the issue of qualified immunity with respect to the plaintiff's § 1983 failure to protect claim.

should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. *Giles v. Kearney*, 571 F.3d 318, 325–26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. In the Third Circuit, it is the party asserting the affirmative defense of qualified immunity who bears the burden of persuasion. *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014). Thus, the moving defendants must

> show that there was no genuine dispute of material fact to refute their contention that they did not violate [the plaintiff's] constitutional rights as he asserted them, or show that reasonable officers could not have known that their conduct constituted such a violation when they engaged in it.

*Id.* As discussed above, there exists a genuine dispute of material fact on

the merits of the plaintiff's § 1983 excessive force claim. But the defendants may nevertheless prevail on summary judgment with respect to this claim under the second prong of the *Saucier* analysis.

"In determining whether a right has been clearly established, the court must define the right allegedly violated at the appropriate level of specificity." *Sharp*, 669 F.3d at 159. If the right is defined too broadly, at a high level of generality, it risks "convert[ing] the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). "We are thus required to frame the right at issue in a more particularized, and hence more relevant, sense, in light of the case's specific context, not as a broad general proposition." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 638 (3d Cir. 2015) (citations and internal quotation marks omitted).

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 640 (citation omitted).

Here, the defendants suggest that the specific context is the use by correctional officers of OC spray and the particular hold used in this case—the "bend over" or "escort" hold—to transport an uncooperative inmate during a high-risk extraction with his hands handcuffed behind his back and held at an angle. (*See* Defs. Br. 13, Doc. 31; Defs. Reply Br. 5.) They argue that the plaintiff is unable to point to a prior decision addressing identical facts.

At that level of specificity, there indeed appears to be no prior caselaw. But this articulation of this case's specific context would effectively require us to find the defendants "protected by qualified immunity unless the very action in question has previously been held unlawful." *See Anderson*, 483 U.S. at 640. The plaintiff's articulation of the specific context is closer to the mark: whether a correctional officer can raise a shackled pretrial detainee's arms so high above his back that it injures him. (Pl. Opp'n Br. 8, Doc. 33.) Ultimately, in the context of summary judgment, where we are required to view the facts in the light most favorable to the non-moving plaintiff, we find the specific context presented to be whether a correctional officer can, while transporting a physically restrained and nonthreatening pretrial detainee *after* a cell

extraction has been completed, gratuitously twist the detainee's shackled arms behind and above his back so far or with sufficient force to dislocate the inmate's shoulder and seriously injure him.

Viewed in this context, it is apparent to us that any reasonable officer would have known in May 2019 that this gratuitous forceful twisting or contortion of a subdued detainee's shackled arms was unlawful. *See Jacobs*, 8 F.4th at 196–97 (finding that by February 2015 it was clearly established that a correctional officer may not strike or otherwise use gratuitous force against a physically restrained and nonthreatening pretrial detainee); *cf. Luchtel v. Hagemann*, 623 F.3d 975, 990 (9th Cir. 2010) (Beezer, J., concurring in part) (noting that it was clearly established "that causing fractures and dislocating shoulders while handcuffing a suspect is excessive force") (arrestee); *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016) ("We have little difficulty concluding that in 2009, the time of the incident, it was well-established, in sufficiently similar situations, that officers may not 'use gratuitous force against a prisoner who has already been subdued . . . [or] incapacitated.'" (alteration in original)) (convicted prisoner); *Brown v. Lewis*, 779 F.3d 401, 419 (6th Cir. 2015) ("[S]ince at least 2009, the use of

violence against a subdued and non-resisting individual has been clearly established as excessive, regardless of whether the individual had been placed in handcuffs.") (arrestee); *Giles*, 571 F.3d at 326 ("[A]t the time of the incident in 2001, it was established that an officer may not kick or otherwise use gratuitous force against an inmate who has been subdued.") (convicted prisoner); *Mickle v. Morin*, 297 F.3d 114, 121–22 (2d Cir. 2002) (finding a reasonable jury could conclude that the use of force sufficient to dislocate arrestee's shoulder was excessive); *Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002) ("By 1998, our precedent clearly established that government officials may not use gratuitous force against a prisoner who has been already subdued or, as in this case, incapacitated.") (convicted prisoner).

Accordingly, we find that the defendants have failed to meet their burden of persuasion with respect to the affirmative defense of qualified immunity.

### C. § 1983 Failure to Protect Claim

The defendants seek summary judgment on the plaintiff's § 1983 failure-to-protect claim against Waltz as well. They argue exclusively that Waltz cannot be held liable for failure to protect because no excessive

force occurred. We have rejected that underlying premise on summary judgment, however, finding that the issue must be left to the jury to resolve based on evidence presented at trial. Thus, the defendants have failed to demonstrate that they are entitled to judgment as a matter of law on the plaintiff's § 1983 failure to protect claim against Waltz.

### D. State-Law Tort Claims

The defendants also seek summary judgment on the plaintiff's state-law tort claims against Gonzalez and Wolfe for assault and battery.

As this court has previously recognized, "incidental and necessary touchings by correctional officers of inmates in the performance of their duties are not batteries, but are privileged contacts." *Picariello v. Fenton*, 491 F. Supp. 1026, 1038 (M.D. Pa. 1980). Under Pennsylvania law, "officials charged with the custody of prisoners are privileged to use force which is reasonable under the circumstances to maintain control of their charges." *Id.*; *see also Bakhtiari v. Spaulding*, No. 1:17-CV-00016, 2017 WL 2778524, at *6 (M.D. Pa. June 27, 2017) ("While corrections officers have the authority to use necessary force under appropriate circumstances, the reasonableness of this force in relation to their employment duties determines whether particular conduct is considered

an assault and battery."). Thus, if a correctional officer uses reasonable force necessary to carry out his duties, that amount of force when applied to an inmate is not tortious. *Picariello*, 491 F. Supp. At 1041.

For the same reasons articulated above with respect to the plaintiff's § 1983 excessive force claim, based on the facts and evidence of record, viewed in the light most favorable to the non-moving plaintiff, we find that a reasonable jury could conclude that the quantum of force used by the defendants was not reasonable under the circumstances. Thus, there remains a genuine dispute of material fact on this issue.

## III. CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment (Doc. 31) will be denied.

An appropriate order follows.

Dated: September 28, 2023          *s/Joseph F. Saporito, Jr.*
                                   JOSEPH F. SAPORITO, JR.
                                   United States Magistrate Judge